UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

STEVEN L. HARRIS,

Petitioner,

vs.

JENNIFER TYVAND, Warden,

Respondent.

Case No. 1:24-cv-00433-REP

**MEMORANDUM DECISION AND ORDER**

Pending before the Court in this habeas corpus action are Petitioner Steven Harris's two Motions for Summary Judgment (Dkts. 42, 51), and Respondent Jennifer Tyvand's Motion for Summary Dismissal (Dkt. 48). Petitioner has also filed three motions requesting court rulings on the outstanding motions. Dkts. 52, 54, 56.

All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. Dkt. 7. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having reviewed the state court record and the federal court record, the Court enters the following Order dismissing the Petition for Writ of Habeas Corpus with prejudice.

## REVIEW OF MOTION FOR SUMMARY DISMISSAL: CLAIM 1 IS NONCOGNIZABLE

Claim 1 is that Petitioner's Fourth Amendment rights were violated because officers stopped his car "for no reason" and without "probable cause." Dkt. 3 at 6. Respondent argues that Claim 1 is noncognizable.

### 1. Standard of Law

Fourth Amendment claims are treated in a unique manner in habeas corpus actions. When a State has provided a defendant with an opportunity for full and fair litigation of a Fourth Amendment claim, it may not be relitigated by a federal district court in a habeas corpus action, "regardless of its view of the correctness of the state decision." *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977) (relying on *Stone v. Powell*, 428 U.S. 465, 481–82 (1976) (Fourth Amendment issues are not cognizable on federal habeas review); *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).

Thus, the threshold issue for a Fourth Amendment claim is whether petitioner had an initial opportunity for a fair hearing in state court. *See Caldwell*, 781 F.2d at 715. The narrow question is not whether he did in fact have a hearing "or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996); *see also Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990). The petitioner bears the burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly. *Mack*, 564 F.2d at 901.

*Powell* does not specify a particular test for determining whether a state provided a defendant with an opportunity for full and fair litigation of a Fourth Amendment claim. To aid in determination of this question, federal district courts in the Ninth Circuit review the transcripts and briefing from the state trial and appellate courts. *See Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-1179 (9th Cir. 1990) (citing *Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981)), *cert. denied*, 499 U.S. 979 (1991).

**2. Relevant Facts**

Petitioner was driving a vehicle without a rear license plate, and the rear brake and left turn signal were not operating. State's Lodging A-1 at 26. Officer Matthew Gonzales stopped the vehicle and approached Petitioner, who did not possess a current driver's license, had slurred speech, impaired memory, and glassy or bloodshot eyes. *Id*. Gonzales could smell alcohol and Petitioner admitted he had been drinking. *Id*.

Gonzles administered the Horizontal Gaze Nystagmus test and "observed 6 clues of impairment." *Id*. After consenting to giving a breath sample, Petitioner conceded he would "flunk" because "he had drunk several beers throughout the day." *Id*. His resulting BrAC was .296/.288. *Id*. Harris was arrested for excessive driving under the influence ("DUI"). *Id*.

Petitioner waived his preliminary hearing, which would have required the State to provide evidence supporting probable cause. State's Lodging A-1 at 34-37. An Information was filed, charging Harris with excessive DUI, a felony under Idaho Code §

18 8004C(2). *Id*. at 38-39. The State later filed an Amended Information asserting Petitioner was a persistent violator of the law. *Id*. at 58-59.

The court entered a scheduling order specifically addressing how to file a motion to suppress evidence. *Id*. at 46. Petitioner wrote a letter to the judge in response, stating that he did not have documentation of his arrest (audio, video, or documentary evidence) and he needed help obtaining that evidence. *Id*. at 51. The court sent Petitioner a response letter notifying him personally that the judge was unable to review ex parte communications and that Petitioner should direct his questions to his public defender, Sean Wynn. *Id*. at 54. Petitioner complained about his counsel in a pretrial conference, and the court made findings and left the representation in place. *Id*. at 55.

With the aid of counsel, Petitioner entered into a plea agreement to plead guilty to excessive DUI in exchange for the State dismissing the persistent violator sentencing enhancement and agreeing to recommend a unified ten-year sentence with the first five years fixed; the agreement included waiving his right to file a motion to reconsider his sentence and his right to appeal unless the trial court exceeded the State's sentencing recommendation. *Id*. at 75-76.

Petitioner completed and signed a Guilty Plea Advisory form that advised him of the rights he was forfeiting, including the right to confront the witnesses against him, which would include his right to cross-examine the arresting officer. *Id*. at 65-74.

The form advised Petitioner:

> Your attorney can obtain various items from the prosecutor relating to your case. This may include police reports, witness statements, tape recordings, photographs, reports of scientific testing, etc. This is called "discovery." Have you had the opportunity to review the discovery provided by your attorney?

*Id*. at 71. Petitioner answered "yes." *Id*.

Petitioner answered, "no," to the question, " Do you want your attorney to take any further action in this case?" *Id*. Petitioner also indicated he was satisfied with his attorney's representation. *Id*.

The trial court accepted his guilty plea (*id*. at 77) and, consistent with the State's recommendation, sentenced him to a unified ten years with five years fixed (*id*. at 77-78). Judgment was entered on December 6, 2022. *Id*. at 79-83. Petitioner did not file a notice of appeal. *Id*. at 20-22.

On post-conviction review, Petitioner raised an ineffective assistance of counsel claim based on the failure to file a motion to suppress. State's Lodging B-1 at 10. The court gave Petitioner notice of intent to dismiss the petition, stating, "Petitioner has not adequately set forth what actions were taken by the police officers for which they did not have probable cause; rather, Petitioner simply makes bare, unsupported allegations." *Id*. at 16-18. The court also found that "Petitioner's allegations that he requested his attorney to file a motion to suppress are disproven by the record," pointing to the Guilty Plea Advisory form. *Id*. at 18-19. Petitioner filed three letters in response (*id*. at 25-41), which,

though improperly filed, were considered by the court. *Id*. at 45. The court dismissed the petition. *Id.* at 45-46. Petitioner had an opportunity to appeal, but filed a late notice of appeal, which was dismissed. *Id*. at 50-55, 59-60.

**3. Discussion**

Petitioner did not file a motion to suppress based upon an alleged lack of probable cause for the traffic stop. The record shows that he was appointed counsel and advised of how to file a motion to suppress. Petitioner did have questions about evidence that would support a motion to suppress, and the court advised him to pose his questions to his counsel. In his Guilty Plea Advisory form, Petitioner specifically agreed that he had reviewed relevant discovery from the State and that he did not want his attorney to take further action in his case.

Petitioner had an additional opportunity to, and did, adjudicate the motion to suppress issue in the context of an ineffective assistance of counsel claim on post-conviction review. He provided no evidence in support of his claim, and his claim is contrary to the facts in the record. Although he consistently claimed without providing evidence that the arresting officer was later fired from the police department for felony perjury (State's Lodging B-1 at 9), Petitioner never addressed the simple and obvious deficiencies with his car that prompted him to be stopped and that have nothing to do with whether the officer was later fired for perjury unrelated to Petitioner's particular case. It is undisputed that Petitioner did not have a license plate affixed to the rear of his

car and that the rear brake and left turn signal were not operating. State's Lodging A-1 at 26.

The Court agrees with Respondent that Petitioner and his counsel had no factual basis for filing a motion to suppress. All of the car's deficiencies are prohibited by law. In addition, no defenses to the DUI charge are apparent from the record. Petitioner chose to accept a favorable plea agreement without the necessity of filing a motion to suppress.

The entirety of the record shows that Petitioner had the opportunity to file a motion to suppress, that he did take the opportunity to raise the issue on post-conviction review, and that he had opportunity to appeal. That is all that is required under *Powell*. *See Ortiz-Sandoval*, 81 F.3d at 899; *Gordon*, 895 F.2d at 613; *Brummett v. Finn*, 2016 WL 4147137, *4 (D. Idaho 2016) (applying *Powell* where the petitioner was provided the opportunity to, but did not, file a motion to suppress). Claim 1 will be dismissed with prejudice as noncognizable.

## REVIEW OF MOTION FOR SUMMARY DISMISSAL: ALL CLAIMS ARE PROCEDURALL DEFAULTED

Respondent asserts that all claims should be summarily dismissed on procedural default grounds because Petitioner presented no claim to the Idaho Supreme Court in a procedurally proper way, and it is now too late to do so.

### 1. Standard of Law: Exhaustion Requirement and Procedural Default

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a

claim, a habeas petitioner must fairly present it as a *federal* claim to the *highest* state court for review *in the manner prescribed* by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

State court remedies are considered technically exhausted, but not properly exhausted if a petitioner failed to pursue a federal claim in state court and no state remedies remain available. *Id*. at 848. Or, improper exhaustion can occur when a petitioner tried to pursue a federal claim in state court, but the state court rejected it on an adequate and independent state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). To be adequate, a state rule must be "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser*, 266 F.3d 1091, 1093 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). To be independent of federal law, a state procedural rule must not be interwoven with or rest on federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

A claim is "procedurally defaulted" for federal habeas corpus purposes if it was improperly exhausted in state court, including instances where a state court applies an adequate and independent state procedural bar to dismiss a claim. *Coleman*, 501 U.S. at 731.

**2. Discussion of Exhaustion and Procedural Default**

It is undisputed that Petitioner did not file a direct appeal. State's Lodging A-1 at 20-22. Petitioner filed a post-conviction petition, which was dismissed. State's Lodging

B-1 at 15-47. The post-conviction judgment was entered on February 12, 2024. *Id*. at 48. Any appeal was due 42 days later, on or before March 25, 2024. The notice of appeal filed on May 15, 2024, was deemed untimely and dismissed. *Id*. at 59-60.

Petitioner produced a mail log showing he gave prison staff a notice of appeal on March 12, 2024 (which would have been timely), but it also shows that the original notice of appeal was mailed *only* to Grant Loebs, with a copy to a court reporter and the state attorney general on that date. State's Lodging B-1 at 56. This first notice of appeal would have been timely had it been mailed to the state clerk of court, but the mail log does not show that he mailed the original or a copy to the state district court or the Idaho Supreme Court. Nor does the record show that the March notice of appeal was received and docketed by the Idaho courts.

Petitioner asserts that the prosecutor, Mr. Loebs, concealed the appeal from the courts and refused to do his job. *Id*. at 6. But Petitioner had a duty to mail a copy of the notice of appeal to Mr. Loebs, and Mr. Loebs would have had no reason to believe that Petitioner had not also filed the notice of appeal with the court. Nothing in the record shows that Mr. Loebs, as opposed to an administrative assistant or paralegal, personally reviewed the notice, rather than being apprised of it via email or through staff. In any event, a prosecutor has no duty to determine whether a prisoner's original notice of appeal was actually filed with the clerk of court, and so the allegation that Mr. Loebs "refused to do his job" is misplaced. Plaintiff's Idaho State Bar complaints and responses

are unhelpful to his argument, because nothing shows the prosecutor did anything wrong. *See* Dkt. 19-1.

Case law addressing similar notice of appeal submission errors shows that, to take advantage of the "mailbox rule" for a timely appeal, a petitioner must address the envelope containing the notice of appeal correctly:

> A document received "within ten days after the filing deadline is considered timely filed if," as relevant here, "it was *sent to the proper clerk* by United States Postal Service or a commercial delivery service." *See* Tex. R. App. P. 9.2(b)(1)(A) (emphasis added). Courts have interpreted the "proper clerk" liberally to include "agents of the district clerk" and the clerk of the correct court of appeals. *See Taylor v. State*, 424 S.W.3d 39, 45–46 (Tex. Crim. App. 2014); *Moore v. State*, 840 S.W.2d 439, 441 (Tex. Crim. App. 1992). Mailing a notice of appeal to one's attorney or to the trial court judge does not meet the requirements of the rule. *Turner v. State*, 529 S.W.3d 157, 159 (Tex. App.—Texarkana 2017, no pet.) (holding prisoner mailbox rule did not apply when appellant delivered envelope to prison authorities for forwarding to trial judge); *Rhodes v. State*, 05-16-00921-CR, 2017 WL 3587101, at *2 (Tex. App.—Dallas Aug. 21, 2017, no pet.) (mem. op., not designated for publication) (mailing notice of appeal to third-party agent for redelivery to trial court clerk does not comply with rule). In the absence of a timely filed notice of appeal, we must dismiss the appeal for want of jurisdiction. *See Castillo v. Sate*, 369 S.W.3d 196, 198 (Tex. Crim. App. 2012).

*Bowen v. State*, No. 05-19-01530-CR, 2020 WL 1042646, at *1 (Tex. App. Mar. 3, 2020).

Even in a case where the notice was sent directly to the judge, rather than the clerk of court, the notice of appeal was deemed improperly filed:

> Turner delivered an envelope to prison authorities for forwarding to the trial judge. Once delivered, the notice sat on the trial judge's desk for a period of time, and it was not forwarded to the clerk for filing until January 20, 2017. Because Turner did not deliver the notice of appeal "to prison authorities for forwarding to the court clerk," we find that the prisoner mailbox rule does not apply. *See Campbell*, 320 S.W.3d at 344.

*Turner v. State*, 529 S.W.3d 157, 159 (Tex. App. 2017).

Similarly, another court determined:

> [T] the envelope was not addressed to the district clerk or any other clerk. Instead, it was addressed to Dallas County Court #265. Even if the district clerk and the district court are located in the same building, as they were in *Moore*, the application of the rule in that case was not based on proximity, but rather based on the fact that the envelope was addressed to a clerk. Regardless of the location of the district clerk in Dallas County, the district clerks in the other 253 counties in Texas might not be in the same building as the district courts.
>
> Further distinguishing this case from *Moore* is that the trial court is not an agent of the district clerk, and for good reason: judges are ethically prohibited from receiving *ex parte* communications from a party. Instead, it is the clerk that is responsible for maintaining records filed in the court.
>
> In the instant case, Appellant's envelope was not addressed to the court of appeals. If it had been, the intermediate court would have been mandated under the rules of appellate procedure to forward the notice of appeal to the trial court clerk. Instead, the envelope was addressed to the trial court.
>
> …
>
> Therefore, Appellant's envelope addressed to "Dallas County Court #265" is not properly addressed according to the plain language of Rule 9.2(b)(1)(B).

*Anderson v. State*, 625 S.W.3d 128, 131–32 (Tex. Crim. App. 2021).

Respondent has supplemented the record with the letter that Petitioner wrote to the Idaho Supreme Court to explain the apparent late filing. Petitioner explained the situation above—how he sent the notice of appeal to the prosecutor, and how the prosecutor failed to determine whether Petitioner filed the original. Petitioner does not state in the letter that he actually mailed the original notice of appeal to the clerk of court, on time, or at all. State's Lodging C-1.

The Court concludes that Petitioner did not file his first notice of appeal at all. Plaintiff's second notice of appeal of May 15, 2024, was filed approximately two months too late.

The Idaho Supreme Court did not err in concluding that Petitioner did not file a notice of appeal of the post-conviction action on time and that Petitioner's response and exhibit did not show a timely filing. This decision is consistent with the law.

Accordingly, this Court concludes that all of Petitioner's claims are procedurally defaulted for failure to properly present them to the Idaho Supreme Court. No person or force external to Petitioner caused the untimely filing. And because the time for fair presentation of his habeas claims has expired, they must be summarily dismissed unless Petitioner can establish cause and prejudice or actual innocence.

### 3. Exceptions to Procedural Default

A. Cause and Prejudice Exception to Procedural Default

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ignorance of the state's procedural rules or lack of legal training do not constitute legally cognizable "cause" for a petitioner's failure to fairly present a claim. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908–10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d 1144, 1153 (9th Cir. 2012).

Petitioner has not asserted that any objective external factor caused him to be unable to file the first notice of appeal. Nothing in the Court's review of the record shows any reason to excuse the procedural default via the cause and prejudice exception.

B. Miscarriage of Justice Exception to Procedural Default

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494

(1991), *superseded on other grounds by statute*. A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray*, 477 U.S. at 496. To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Where the petitioner pleaded guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (secondary citations omitted).

The facts cited above show that Petitioner was guilty of the crime charged. Petitioner also escaped prosecution for a persistent violator enhancement by pleading guilty to the crime charged. The miscarriage of justice exception does not apply.

**4. Oddities in the State Court Record**

In its initial review of the record, the Court identified two issues requiring supplementation. After a review of the supplementation, the Court concludes that the issue do not show that Petitioner's claims are not procedurally defaulted or that anything

excuses the procedural default. Dkts. 32 & 33. Nor does the supplemental material show that Petitioner should be granted any further opportunity to present the issues to the state or federal courts, because they are non-issues for purposes of the analyses in this Order.

## PETITIONER'S MOTIONS FOR SUMMARY JUDGMENT

### 1. Standard of Law

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

**2. Discussion of Motion at Docket 42**

Petitioner argues that there is no jurisdictional requirement that state remedies be exhausted before a federal court can hear the habeas claims. The exhaustion rule is not jurisdictional, but this Court must still follow the law requiring exhaustion.

Petitioner asserts that he had no available or effective state court remedy or state corrective process. To the contrary, a motion to suppress opportunity was included in the pretrial schedule, Petitioner pursued the claim in a post-conviction action, and a post-conviction appeal was available to him. He mistakenly did not file his notice of appeal, and his second notice of appeal was untimely. His failure to follow the state court rules does not make the state remedies or state corrective processes unavailable or ineffective. Here, Petitioner had an opportunity to show cause and prejudice or a miscarriage of justice to excuse the procedural default. He has not done so.

Petitioner challenges whether his appeal was dismissed on a clear state procedural ground. The dismissal order shows that the notice of appeal was untimely, depriving the Idaho Supreme Court of jurisdiction over the appeal action. Nothing in the law or the record shows that this is not a clear, well-established, and regularly-applied procedural bar.

Petitioner asserts that, because the constitutionality of the Idaho public defender system has been challenged in a court action, his procedural default based on an untimely notice of appeal should be excused. However, there is no constitutional right to post-

conviction counsel. Petitioner's own actions caused the untimely notice of appeal. As a result, there is no causal link between the public defender system and Petitioner's procedural default.

To the extent that the Court did not address all of the nuances of Petitioner's arguments directly, they are rejected without discussion. This motion will be denied.

**3. Discussion of Motion at Docket 52**

Petitioner argues that the prosecutor should have attempted to file Petitioner's notice of appeal with the clerk of court. That argument has been rejected above. The Court has also rejected Petitioner's argument that the Idaho Supreme Court decision rejecting his notice of appeal as untimely is not adequate and independent of federal law. The Court also rejects Petitioner's argument that he has met the cause and prejudice standard with his argument.

To the extent that the Court did not address all of the nuances of Petitioner's arguments directly, they are rejected without discussion. This motion will be denied. Dkt. 51.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 48) is GRANTED.
2. The Court will not issue a certificate of appealability for any issue or claim, because the decision on the issues and claims is not reasonably debatable.

3. Petitioner's Motions for Summary Judgment (Dkts. 42, 51) are DENIED.

4. Petitioner's Motion regarding Order of 4-12-26 (Dkt 52) is DENIED.

5. Petitioner's Motion for Certificate of Appealability (Dkt. 54) is DENIED.

6. Petitioner's Motion Requesting Judgement or C.O.A. (Dkt. 56) is GRANTED only to the extent that this Order has been issued and this case has been dismissed. A certificate of appealability has not been granted, but Petitioner may request one from the Ninth Circuit Court of Appeals.

DATED: August 14, 2026

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge